UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

GREAT LAKES COMNET, INC., *et al.*,[1]

      Debtors.

_____/

PETER KRAVITZ, LIQUIDATION TRUSTEE,

      Plaintiff,

v.

JOHN SUMMERSETT, PAUL BOWMAN, RYAN THELEN, ANDRE COOKS, RANDY FLETCHER, JANET BEILFUSS, SIDNEY SHANK, TODD ROESLER, DUANE BRONSON, DAVID LAROCCA, LES JENKINS, GEORGE ORPHAN, DAVID SCHROEDER, JOHN LODDEN, MICHIGAN NETWORK SERVICES, LOCAL EXCHANGE CARRIERS OF MICHIGAN INC., IBDC TELECOM CORPORATION, NULEEF COMMUNICATIONS LLC, and JOHN DOES,

      Defendants.

_____/

Case No. GL 16-00290-jtg
(Jointly Administered)

Chapter 11

Hon. John T. Gregg

Adv. Proc. No. 17-80180-jtg

**OPINION REGARDING MOTION OF DAVID LAROCCA TO
DISMISS COMPLAINT PURSUANT TO FED. R. BANKR. P. 7012**

APPEARANCES:  Richard C. Kraus, Esq., Scott L. Mandel, Esq. and Scott A. Chernich, Esq., FOSTER SWIFT COLLINS & SMITH, PC, Lansing, Michigan for David LaRocca; Michael C. Hammer, Esq. and Doron Yitzchaki, Esq., DICKINSON WRIGHT PLLC, Ann Arbor, Michigan, Jonathan Bach, Esq., David Bright, Esq., Max Schlan, Esq., Seth Van Aalten, Esq. and Cathy Hershcopf, Esq., COOLEY LLP, New York, New York for Peter Kravitz, Trustee of the GLC Liquidation Trust

---

[1]   The Debtors are Great Lakes Comnet, Inc. (Case No. 16-00290) and Comlink, L.L.C. (Case No. 16-00292-jtg).

David LaRocca ("LaRocca"), a former member of the board of directors of Great Lakes Comnet, Inc. (the "Debtor"), filed a motion to dismiss [Adv. Dkt. No. 28] (the "Motion") in which he argues that Peter Kravitz, the Trustee of the GLC Liquidation Trust (the "Trustee"), has failed to state a claim for breach of fiduciary duty under Michigan law. The Trustee filed a response [Adv. Dkt. No. 56] (the "Response") in which he contends that he has plausibly stated a claim for breach of the duty of care and, in particular, the duty to oversee and monitor the affairs of the Debtor.[2] For the following reasons, the court shall grant the Motion.

## **JURISDICTION**

The federal district courts have "original and exclusive jurisdiction" over all cases under 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), but may refer bankruptcy cases to the bankruptcy courts. 28 U.S.C. § 157(a); 28 U.S.C. § 1334(a). Upon referral, bankruptcy courts are authorized to hear, determine, and enter appropriate orders and judgments in core proceedings "arising under" the Bankruptcy Code, or "arising in" a case under the Bankruptcy Code.[3]

In this adversary proceeding, the relief sought against LaRocca does not arise under the Bankruptcy Code or in a case under the Bankruptcy Code. *See* 28 U.S.C. § 157(b)(1); *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir. 1991) (citation omitted). Rather, the Trustee's claim against LaRocca for his alleged breach of fiduciary duty arises under Michigan law. The claim is also not a proceeding that can arise solely in the context of a bankruptcy case, because the claim may be pursued without the

---

[2]   Citations to "[Dkt. No. __]" are to entries on the docket in the underlying bankruptcy case, while citations to "[Adv. Dkt. No. __]" are to entries on the docket in this adversary proceeding. The Federal Rules of Civil Procedure are set forth in Fed. R. Civ. P. 1 *et seq.* and are identified as "Rule ___."

[3]   The United States District Court for the Western District of Michigan has made such a reference. LCivR 83.2(a).

prerequisite of a bankruptcy filing.  *See id.* at 1144 (citation omitted).  As such, the Trustee's claim against LaRocca does not constitute a core proceeding.

Nonetheless, this court may exercise jurisdiction if the proceeding is "non-core, but related to" the bankruptcy.  28 U.S.C. § 157(c)(1).  The Sixth Circuit Court of Appeals has stated that "'[t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"  *In re Wolverine Radio Co.*, 930 F.2d at 1142 (quoting *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3d Cir. 1984)).

Because the Trustee's claim against LaRocca could form the basis for increased payments to creditors under the Debtor's confirmed plan of liquidation, this proceeding is non-core, but related to the Debtor's bankruptcy.  *See*, *e.g.*, *Morris v. Zelch (In re Reg'l Diagnostics, LLC)*, 372 B.R. 3, 22-25 (Bankr. N.D. Ohio 2007) (related to jurisdiction because potential recovery from breach of fiduciary duty claim would augment creditor recovery); *see also Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002) (related to jurisdiction because potential recovery from legal malpractice claim would represent asset available for distribution to creditors).[4]

### **BACKGROUND**[5]

The Debtor was a corporation formed under the laws of the State of Michigan that provided fiber optic telecommunication services to third party carriers such as AT&T, Verizon and Sprint throughout Michigan, Ohio, Wisconsin, Illinois and Minnesota.  (Compl. ¶¶ 21, 22)  Prior to May 1, 2014, LaRocca was a member of the Debtor's board of directors.  (Compl. ¶ 15; Mot., Ex. C,

---

[4]    The order entered in connection with this Opinion is not a final judgment or order.  The court's authority in that regard is therefore not at issue.  The court notes, however, that the Trustee has consented in paragraph 5 of the Complaint to entry of a final judgment or order by this court.  *See* 28 U.S.C. § 157(c)(1)-(2); *Wellness Int'l Network, Ltd. v. Sharif*, ___ U.S. ___, 135 S. Ct. 1932, 1949 (2015).

[5]    For purposes of the Motion, the court accepts as true the following factual allegations in the Complaint.

pp. 3-4)  Beginning in 2010, the officers of the Debtor concocted and implemented four schemes that enabled the Debtor to charge national exchange carriers with illegal tariffs.  (Compl. ¶¶ 34-70)  In 2012 and in response to these tariffs, the carriers began to withhold payments from the Debtor.  (Compl. ¶ 71)

The officers first disclosed to the board that the carriers were disputing the tariffs levied by the Debtor in January 2013.  (Compl. ¶ 73)  However, the officers did not reveal the true nature of these disputes.  (Compl. ¶ 73)  Instead, the officers described them as "billing disputes" that were mere "collection issues."  (Compl. ¶¶ 73, 105)

On February 26, 2014, certain carriers filed an informal complaint against the Debtor and its alleged third party co-conspirators with the Federal Communications Commission (the "FCC").  (Compl. ¶ 75)  The officers provided the board with a copy of the informal complaint in early March 2014, but did not disclose the true nature of the disputes or the risks associated with them.  (Compl. ¶ 75; Mot., Ex. A, p. 3)  Instead, the officers informed the board at a board meeting on March 6, 2014 that the informal complaint was an "*opportunity* that would 'hopefully bring negotiations to a head'" and continued to refer to the carriers' complaints simply as billing disputes.  (Compl. ¶ 75 (emphasis in original); Mot., Ex. A, pp. 3-4)  During the board meeting, the officers disclosed to the board that the carriers were withholding $25 million from the Debtor as a result of the billing disputes.  (Compl. ¶ 75; Mot., Ex. A, p. 2)

At no time between 2010 and April 2014 did the officers mention to the board their schemes or the carriers' specific complaints, many of which had been communicated to the officers in writing.  (Compl. ¶¶ 74, 121)  The officers' concealment of their schemes "began to crumble as of April 2014" when another carrier filed a second informal complaint with the FCC that actually detailed the officers' schemes.  (Compl. ¶ 79)  The board was informed for the first time in April

2014 that the Debtor was losing money and that cash flow was "extremely tight."  (Compl. ¶ 79)

According to the minutes from the board meeting on April 28, 2014, "the total amount due from

the [carriers was] between $50 and $60 million."  (Mot., Ex. B, p. 2)  The officers apprised the

board that the Debtor would need to seek capital infusions or new loans to "cover growth" while

it sought to resolve the billing disputes.  (Compl. ¶ 79; Mot., Ex. B, p. 2)  Three days later,

LaRocca's term on the board expired.[6]  (Mot., Ex. C, pp. 3-4)

The facts underlying the officers' schemes were "likely" unknown to the board until a

formal complaint was filed with the FCC by one of the carriers in October 2014, approximately

five months after LaRocca had left the board.  (Compl. ¶ 121)  Even after disclosure to the board,

the officers' schemes continued until April 2015.  (Compl. ¶ 149)  With its financial condition

imperiled as a result of the schemes, the Debtor filed a voluntary petition for relief under chapter

11 on January 25, 2016.  (Compl. ¶ 2)

On March 27, 2017, the court confirmed the Debtor's plan of liquidation [Dkt. No. 737],

which established the GLC Liquidation Trust.  (Compl. ¶ 11)  Upon the effective date of the plan

[Dkt. No. 742], the Debtor's assets, including the cause of the action against LaRocca, vested in

the GLC Liquidation Trust.  (Compl. ¶ 11)

The Trustee commenced this adversary proceeding by filing a Complaint against the

Debtor's officers and directors, among others, on November 10, 2017 [Adv. Dkt. No. 1].  The

Complaint is comprised of fifteen causes of action.  With respect to LaRocca, the Complaint

alleges only that he breached his fiduciary duties to the Debtor.

---

[6]  LaRocca was not re-elected to the board during the annual meeting of shareholders on May 1, 2014.  (Mot., Ex. C, pp. 3-4)

In lieu of answering the Complaint, LaRocca filed the Motion. After the matter was fully briefed, the court held a hearing and took the matter under advisement.

## LEGAL STANDARD

Rule 12 is incorporated by Fed. R. Bankr. P. 7008 and provides, in pertinent part, that a party may seek dismissal of a complaint for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quotation omitted). In determining a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept all factual allegations as true and construe all inferences from those allegations in favor of the plaintiff. *Gavitt v. Born*, 835 F.3d 623, 639-40 (6th Cir. 2016) (citation omitted).

A court must determine whether a complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but instead requires more than a "sheer possibility" that the defendant has committed the misconduct. *Id.* If the complaint pleads only facts that are merely "consistent with" a defendant's liability, the complaint has fallen short and has merely alleged, but not shown, that the plaintiff is entitled to relief. *Id.*

The plausibility standard thus requires a plaintiff to plead sufficient facts to raise a "reasonable expectation" that discovery will reveal evidence of the misconduct alleged. *Twombly*, 550 U.S. at 556. Conclusory legal allegations that lack the facts necessary to establish a cause of

action will not suffice. *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011).

Although consideration of a motion to dismiss should generally be confined to the pleadings, it is appropriate to consider a document outside the pleadings "when [it] is referred to in the pleadings and is integral to the claims." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). Along these lines, the court is permitted to consider a document if it "fill[s] in the contours and details of the plaintiff's complaint, and add[s] nothing new." *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

In the Motion and his reply brief [Adv. Dkt. No. 60], LaRocca attached and relied on minutes from board meetings and an annual shareholders meeting. The Complaint specifically refers to board meeting minutes and information provided by the officers to the board during those meetings. All of the meeting minutes directly relate to the cause of action against LaRocca for breach of fiduciary duty and are integral to the allegations in the Complaint. Given the lack of any objection and both parties' reliance on these documents at the hearing, the court shall consider them in connection with the Motion.

## DISCUSSION

The Complaint generally states that LaRocca and other directors "owed duties of care, good faith and loyalty" to the Debtor. The Complaint is silent, however, as to which particular fiduciary duty LaRocca allegedly breached.[7] Left to guess as to the particular breach, LaRocca argues that the Complaint fails to plausibly state a claim for breach of the duties of loyalty and good faith. LaRocca contends that the Trustee has not pled sufficient facts to rebut the business judgment rule.

---

[7]    The Complaint also makes no specific substantive allegations with respect to LaRocca. Instead, it lumps LaRocca in with the other board member-defendants.

Moreover, LaRocca argues that even if the Trustee has pled around the business judgment rule, the Complaint nevertheless alleges numerous misrepresentations made by the officers to the board, thereby giving LaRocca a defense to the claim.

In his Response, the Trustee clarifies that he is alleging LaRocca breached the duty of care, not the duties of loyalty and good faith, under the Michigan Business Corporation Act, Mich. Comp. Laws §§ 450.1101 *et seq.* (1989) (the "MBCA").[8]  The Trustee contends that he has satisfied the requisite pleading standard by alleging that LaRocca failed to investigate the schemes after learning that (i) the Debtor was in a precarious financial position, (ii) the Debtor's customers had filed two informal complaints with the FCC, and (iii) the customers were withholding payments due to billing disputes.

## A.     *Michigan Law Applies to the Claim*

Because LaRocca was a director of a Michigan corporation, Michigan law applies to the Trustee's claim.  *See* Mich. Comp. Laws § 1127; *Petroleum Enhancer, LLC v. Woodward*, 558 Fed. Appx. 569, 573 (6th Cir. 2014).  The court must therefore "apply state law in accordance with the controlling decisions of the state supreme court."  *Id*. (internal quotations and citations omitted).  The Michigan Supreme Court has not previously addressed a director's oversight obligations as part of his or her duty of care under the MBCA.  In fact, there are relatively few published decisions from the Michigan courts regarding a breach of the duty of care under the MBCA.

When considering an undecided issue of Michigan law, this court must make "the best prediction, even in the absence of direct state court precedent, of what the [Michigan] Supreme Court would do if it were confronted with this question."  *Managed Health Care Assocs. v. Kethan*,

---

[8]     Although LaRocca has addressed the duty of loyalty in the Motion, his arguments are in large part equally applicable to the duty of care under Michigan law.

209 F.3d 923, 927 (6th Cir. 2000) (quotation omitted).  All relevant authority, including decisions

from the Michigan Court of Appeals and other jurisdictions, should be considered.  *Mazur v.
Young*, 507 F.3d 1013, 1016-17 (6th Cir. 2007) (citation omitted).

**B.      *Business Judgment Rule***

The officers and directors of a corporation formed under the laws of Michigan owe duties

of care, good faith and loyalty to the corporation and its shareholders.  *See, e.g.*, *Coppola v.
Manning*, 2015 WL 7288050, at *3-4 (Mich. Ct. App. Nov. 17, 2015) (citations omitted).  Similar

to the law in other states, the business judgment rule gives significant deference to the decisions

of directors of Michigan corporations.  *In re Estate of Butterfield*, 418 Mich. 241, 255; 341 N.W.2d

453 (Mich. 1983) (court should be "most reluctant to interfere with the business judgment and

discretion of directors"); *Wentworth v. Wentworth*, 2017 WL 4655367, at *8 (Mich. Ct. App. Oct.

17, 2017) (citations and internal quotations omitted) (courts should refrain from interfering with

business judgment of directors).

The presumption afforded to directors by the business judgment rule has been explained as

follows:

> [i]n making a business decision the directors of a corporation acted on an
> informed basis, in good faith and in the honest belief that the action was
> taken in the best interests of the company.  *That presumption can be
> rebutted if the plaintiff shows that the directors breached their fiduciary
> duty of care or of loyalty or acted in bad faith.*  The business judgment rule
> is [therefore] process oriented and informed by a deep respect for all good
> faith board decisions.   The rule requires substantial deference, and
> ultimately protects decisions unless they cannot be attributed to any rational
> business purpose.

*F5 Capital v. Pappas*, 856 F.3d 61, 87 (2d Cir. 2017) (citation and internal quotations omitted)

(emphasis added); *Adelman v. Compuware Corp*., 2017 WL 6389899, at *11 (Mich. Ct. App. Dec.

14, 2017) (citing favorably to business judgment rule discussion in *F5 Capital*).  The business

judgment rule is not an affirmative defense.  Rather, it is a substantive and procedural presumption that must be rebutted, even at the motion to dismiss stage.  *See, e.g.*, *Xtreme Power Plan Trust v. Schindler (In re Xtreme Power, Inc.)*, 563 B.R. 614, 642 (Bankr. W.D. Tex. 2016); *Boles v. Filipowski (In re Enivid, Inc.)*, 345 B.R. 426, 442-43 (Bankr. D. Mass. 2006).

## C.   *Pleading Breach of the Duty of Care*

The threshold question at this stage of the litigation is whether the Trustee has rebutted or pled around the business judgment rule by plausibly pleading a claim against LaRocca for breach of the duty of care under Michigan law.[9]  Unlike other states which rely solely on common law, Michigan has codified the fiduciary duties of corporate officers and directors.  *Compare* Mich. Comp. Laws § 450.1541a *with e.g.*, *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 33, 40-41 (Bankr. D. Del. 2011) (explaining common law fiduciary duties under Delaware law).  The MBCA provides, in pertinent part, that:

> (1)   A director or officer shall discharge his or her duties as a director or officer including his or her duties as a member of a committee in the following manner:
>
> > (a)   In good faith.
> >
> > (b)   With the care an ordinarily prudent person in a like position would exercise under similar circumstances.
> >
> > (c)   In a manner he or she reasonably believes to be in the best interests of the corporation.

Mich. Comp. Laws § 450.1541a(1).  Courts in Michigan generally consider a breach of fiduciary duty to be a question of fact that should be determined based on the totality of the circumstances.

---

[9]   Courts applying Delaware law have held that a director is not entitled to the protections of the business judgment rule when the director fails to take action consistent with his or her oversight obligations.  *See, e.g.*, *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993).  Michigan courts have not addressed this issue.   Because Michigan courts have previously applied the business judgment rule to claims for breach of the duty of care, this court will assume that the business judgment rule applies to the Trustee's claim against LaRocca for breach of the duty of care.  Regardless of whether the business judgment rule applies, the court's decision would not change.  This is ultimately a question for the Michigan courts to answer.

*City of Grand Rapids v. F&M Foods, Inc.*, 2007 WL 914667, at *4 (Mich. Ct. App. Mar. 27, 2007) (citation omitted).

When considering a director's alleged failure to properly monitor and oversee corporate affairs, courts in other jurisdictions have examined whether a complaint identifies "red flags" that should have put the director on notice of the need to investigate. Relying on numerous decisions applying Delaware law, LaRocca argues that this court should conclude that the Trustee has not pled sufficient red flags to implicate his oversight obligations.[10]

The seminal case on director oversight in Delaware is *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996). In *Caremark*, certain director-defendants filed a motion to dismiss breach of fiduciary duty claims brought against them by the corporation's shareholders in a derivative suit. Applying Delaware common law, the *Caremark* court explained that in order to plead a director has breached his duty of care by failing to oversee affairs of the corporation and its officers, the plaintiff must identify red flags that demonstrate the board "allowed a situation to develop and continue which exposed the corporation to enormous legal liability and that in so doing, they violated a duty to be active monitors of corporate performance." *Id*. at 967. The *Caremark* court further explained that directors must:

> assur[e] themselves that information and reporting systems exist in the organization that are reasonably designed to provide to senior management and to the board itself timely, accurate information sufficient to allow management and the board, each within its scope, to reach informed judgments concerning both the corporation's compliance with law and its business performance.

*Id*. at 970.

---

[10]   The parties have not directed this court to any authority from the state or federal courts in Michigan adopting the use of "red flags" for purposes of pleading breach of fiduciary duty claims under Michigan law. The court has likewise not uncovered any such authority after conducting some independent research.

The *Caremark* court characterized this legal theory as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Id.* at 967. After *Caremark*, federal and state courts applying Delaware law have continued analyze red flags to determine whether a complaint in a derivative action can withstand a motion to dismiss. *See, e.g.*, *In re Capital One Derivative S'holder Litig.*, 952 F.Supp.2d 770, 786 (E.D. Va. 2013); *In re Citigroup Inc. S'holder Litig.*, 964 A.2d 106, 124 (Del. Ch. 2009).[11]

LaRocca contends that because the Complaint fails to allege red flags similar to those in *Caremark* and other decisions applying Delaware law, the Trustee has not stated a claim upon which relief can be granted. The court disagrees for two reasons.

*1.      Rule 12(b)(6) Applies in This Adversary Proceeding*

First, *Caremark* and its progeny are *procedurally* distinguishable from this adversary proceeding. Those decisions all arose in the context of a motion to dismiss filed in a derivative suit. Because they are based on Rule 23.1 and similar procedural rules under applicable state law, they examine whether a claim for relief has been stated by employing the heightened pleading standard of particularity. *See, e.g.*, *Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*, 2016 WL 4076369, at *7 (Del. Ch. Aug. 1, 2016).[12] They are not based on the plausibility standard that this court is required to apply in connection with a motion to dismiss under Rule 12(b)(6).

---

[11]      The Delaware Supreme Court clarified in *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) and subsequent decisions that a director's oversight obligations arise under the duty of loyalty and its good faith subset, not the duty of care. *In re Citigroup Inc. S'holder Litig.*, 964 A.2d at 122-23. While including a director's oversight obligations as part of the duty of care is inconsistent with recent decisions applying Delaware law in derivative suits, Michigan law controls for purposes of this dispute. Michigan is not Delaware. The court need not address the means by which to state a claim under Michigan law for breach of the duty of loyalty, including in a federal court derivative suit, as part of this decision.

[12]      Rule 23.1 requires a plaintiff in a derivative suit to plead with particularity either his or her efforts to spur the board to take the action sought and why those efforts were unsuccessful, or the reasons why he or she did not make a demand on the board to take the requested action (*i.e.*, why such a demand would have been futile). *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).

This court therefore finds *Caremark* and other decisions in the context of derivative suits procedurally unpersuasive at this stage of the litigation. It is simply unnecessary for the Trustee to satisfy the heightened pleading standard required in derivative suits under Rule 23.1 and its state law counterparts.

### 2.      *Michigan Applies an Ordinary Negligence Standard*

Second, Delaware law is *substantively* distinguishable from Michigan law. Delaware applies a gross negligence standard to breach of fiduciary duty claims. *See, e.g.*, *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 192 (Del. Ch. 2005). Nevertheless, LaRocca argues that this court should look to Delaware law because in the absence of "clear" Michigan law on corporate matters, Michigan courts refer to Delaware law. *See Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 674 n.16 (6th Cir. 2004). LaRocca is generally correct. However, where Michigan law is "clear," it is unnecessary to look to Delaware law.

Michigan law is clear in this regard. Under Mich. Comp. Laws § 450.1541a, the standard of care is one of "ordinary neglect." *See, e.g.*, *Resolution Trust Corp. v. Rahn*, 854 F. Supp. 480, 486 (W.D. Mich. 1994) (citation omitted); *City of Grand Rapids*, 2007 WL 914667, at *4 (citing *Dykema v. Muskegon Piston Ring Co*., 348 Mich. 129, 136; 82 N.W.2d 467 (Mich. 1957)). In order to satisfy the ordinary negligence standard, a plaintiff must plead that (i) a duty existed, (ii) the duty was breached, and (iii) such breach was the proximate cause of damages. *In re Byrne Estate*, 2014 WL 1233708, at *4 (Mich. Ct. App. Mar. 25, 2014); *see Petroleum Enhancer, LLC v. Woodward*, 558 Fed. Appx. at 573-74 (Michigan law).

In a decision that predates the MBCA and its predecessor statutes, the Michigan Supreme Court considered whether directors had complied with their duty of care by overseeing and monitoring a manager's administration of the corporation's affairs. *See Martin v. Hardy*, 251

Mich. 413; 232 N.W. 197 (Mich. 1930).  In *Martin*, a bankruptcy trustee brought suit against the sole manager and the directors of a Michigan corporation for negligence in the performance of their duty of care.  *Id*. at 415.  The trustee asserted that the manager had recklessly managed the corporation's affairs by selling goods below cost.  *Id*. at 418.  The trustee also alleged that the directors breached their duties because they were inattentive to the manager's conduct.  *Id*. at 415. The trial court dismissed the complaint and the trustee appealed.[13]  *Id*. at 415-16.

On appeal the Michigan Supreme Court affirmed.  It concluded that all but one of the directors had not breached their duty of care because they had given instructions to the manager "and were assured by him from time to time" that he was following those directions.  *Id*. at 418. The court explained that "[a] detailed supervision of the sale was not required of them."  *Id*.

The *Martin* court also based its decision on the fact that the manager had misrepresented the financial condition of the corporation in its annual report and by creating a false inventory.  *Id*. The court explained that:

> He deceived the directors, a fact which they did not discover until their July meeting.  Plaintiff charges negligence because they did not discover it earlier.  We do not think they were negligent in this respect, but, if so, it did not result in any loss to the company.

*Id*. at 419.  With respect to the director that had breached his fiduciary duty, the court concluded that he had not given his attention to the corporation.  *Id*.  In contrast to the other directors, he failed to attend meetings and was wholly inattentive to the affairs of the corporation.  *Id*.

The Michigan Supreme Court's decision in *Martin* certainly predates the MBCA and its predecessor statutes.  It was based on common law ordinary negligence principles.  However, this court concludes that even after codification of a director's fiduciary duties under the MBCA and

---

[13]      The trial court dismissed the complaint on the theory that the directors "were not guilty of actionable negligence in the performance of their duties."  *Id*. at 415-16.  The decision is less than clear regarding the stage of the litigation at which dismissal was granted, but it appears a trial had been held.

its predecessor statutes, *Martin* remains highly persuasive, if not controlling. The Michigan legislature is presumed to know of the existence of the common law when it acts. *Dawe v. Dr. Reuven Bar-Levav & Assocs., P.C.*, 485 Mich. 20, 28; 780 N.W.2d 272 (Mich. 2010) (quotation omitted). If the Michigan legislature elects to employ a common law term in a statute without indicating an intent to alter the common law, Michigan courts interpret the statutory term consistent with its common law meaning. *In re Bradley Estate*, 494 Mich. 367, 377; 835 N.W.2d 545 (Mich. 2013) (citation omitted).

When it enacted the MBCA, the Michigan legislature did not amend or explicitly abrogate the common law, nor does the legislative history reveal any intention to do so. *See* Enrolled Analysis-Bus. Corp. Act, S.B. 181 (July 24, 1998); Comm. & Tech. Comm. Summ. – Bus. Corp. Act, S.B. 181 (April 25, 1989); *accord Detroit Gray Iron & Steel Foundries, Inc., v. Martin*, 362 Mich. 205, 217; 106 N.W.2d 793 (Mich. 1961) (noting that predecessor to current version of MBCA codified standard for director's duties in *Martin*). Moreover, after *Martin*, the Michigan legislature has continued to use similar language when prescribing a director's duties. *See* Mich. Comp. Laws § 450.1541a (1989); Mich. Pub. Acts 284, § 541 (1972); Mich. Pub. Acts 327, § 10135-47 (1931).

In the absence of any contrary authority, this court predicts that the Michigan Supreme Court would continue to rely on *Martin* if required to interpret issues of director oversight under the MBCA. *See also* Stephen H. Schulman, *et al*., Mich. Corp. Law & Prac. § 5.9 (2018). By employing an ordinary negligence standard, Michigan continues to hold officers and directors liable for less culpable conduct than the gross negligence standard employed by Delaware and other states. *See In re Caraco Pharm. Lab. S'holder Litig.*, 2017 WL 2562635, at *6 (Mich. Ct. App. June 13, 2017) (recognizing distinction between corporate law in Michigan and Delaware

when considering exculpatory clause); *see also Rahn*, 854 F. Supp. at 486 (distinguishing ordinary negligence standard under Michigan law from gross negligence standard under 12 U.S.C. § 1821(k)).  To that end, it is unnecessary for the Trustee to allege facts in his Complaint that rise to the same level of egregiousness as required by *Caremark* and other similar decisions.

In sum, this court is not persuaded by decisions that consider a motion to dismiss in the context of a derivative suit under Delaware law.   At this stage of the litigation, the Trustee is only required to plausibly plead facts sufficient to state a claim for breach of the duty of care under Michigan law.

### D.      The Complaint Plausibly States a Claim Under Fed. R. Civ. P. 12(b)(6)

Although the Trustee need not satisfy Rule 23.1 and its counterparts or the gross negligence standard, the Trustee must still plead more than a mere recitation of the *prima facie* elements for ordinary negligence under Michigan law to survive a motion to dismiss under Rule 12(b)(6).  The Trustee must amplify his breach of fiduciary duty claim with factual allegations that are consistent with *Twombly* and *Iqbal* and that are sufficient under Michigan law to rebut the business judgment rule.  *See In re Butterfield Estate*, 418 Mich. at 263; *see also Churella v. Pioneer State Mut. Ins. Co.*, 258 Mich. App. 260, 272; 671 N.W.2d 125 (Mich. Ct. App. 2003) (plaintiff must plead sufficient facts to overcome business judgment rule in policyholders suit to compel distribution). While the facts need not be so detailed to rise to the level of satisfying Fed. R. Civ. P. 9(b), they must still allow the court to infer more than a mere possibility of misconduct.  *Iqbal*, 556 U.S. at 679 (citation omitted).  The court must therefore determine whether, as a matter of law, the facts alleged by the Trustee are sufficient to put a reasonably prudent person in a similar position on notice of a need to further investigate the Debtor's affairs.

Taking the facts alleged in the Complaint as true, the court concludes that the Trustee has plausibly stated a claim against LaRocca for breach of his duty of care under the MBCA. First, there can be no dispute that LaRocca owed a duty of care to the Debtor pursuant to the MBCA. LaRocca was clearly a member of the Debtor's board of directors until May 1, 2014.

Second, the Complaint relies on the following facts to support the allegation that LaRocca should have investigated prior to leaving the board:

- The informal complaint filed with the FCC in late February 2014 was disclosed to, and shared with, LaRocca in early March 2014.

- During the board meeting on March 6, 2014, LaRocca was informed that the billing disputes had caused an increase in accounts receivable and accrued liabilities, and that the reserve balance related to the disputes was $25 million.

- The board, including LaRocca, authorized a stock offering valued at approximately $10 million on March 31, 2014 after learning the billing disputes had caused cash flow issues.

- Sometime on or before April 28, 2014, LaRocca learned of the second informal complaint filed with the FCC on April 4, 2014.

- The officers informed LaRocca on April 28, 2014 that the Debtor would post a significant loss due to the billing disputes with its customers, which had cost the Debtor between $50-60 million in revenues.

- The officers told LaRocca on April 28, 2014 that additional funds were needed due to tight cash flow.

(Compl. ¶¶ 75, 80, 79; Mot., Ex. A, pp. 2-3; Ex. B, p. 2)

The Trustee contends that the informal complaints filed with the FCC before April 2014 were at least some evidence of the officers' misconduct even if not enough, standing alone, to put LaRocca on notice of the need to investigate further. (Compl. ¶ 75) Beginning in April 2014, the Complaint alleges that LaRocca should have recognized, and acted upon, these extraordinary facts by making further inquiry. (Compl. ¶ 79) While these facts likely do not rise to the level of red

flags relied upon by courts applying Delaware law, they are sufficient to plead a breach under Michigan law.

Third and finally, the Complaint plausibly states that LaRocca's breach resulted in damages to the Debtor. The Complaint asserts that the officers' schemes and the resulting order from the FCC imposing significant liability caused foreseeable damage to the Debtor, ultimately resulting in its bankruptcy filing. (Compl. ¶¶ 2, 89, 94) The Complaint further alleges that many of the penalties, liabilities and damage claims arising from the FCC order accrued after the time when the board, including LaRocca, was aware of the officers' schemes and failed to take remedial action. (Compl. ¶ 95) Specifically, the Complaint alleges that the breach of fiduciary duty by the board members allowed the officers' schemes to continue for approximately another year until the schemes were finally ended in April of 2015. (Compl. ¶ 149) The Complaint plausibly alleges that additional damages to the Debtor accrued during this period due to the board's breaches. (Compl. ¶¶ 149-150)

LaRocca argues that he should be treated differently from the other director-defendants because he left the board on May 1, 2014. While the court agrees that LaRocca's situation is more attenuated than the other director-defendants, LaRocca still had a duty to exercise his oversight responsibilities until his last day of service to the Debtor. (Compl. ¶¶ 146-147) The Complaint alleges just enough by stating that LaRocca had knowledge of information that should have caused a reasonably prudent person to investigate prior to his departure from the board on May 1, 2014. (Compl. ¶¶ 79-83, 148-149) When LaRocca did not take steps consistent with his oversight duties, the officers' schemes continued until April 2015 and ultimately forced the Debtor to file for bankruptcy. (Compl. ¶¶ 148-150) The Trustee has alleged sufficient facts in support of causation.

By plausibly stating a claim for breach of the duty of care, the Trustee has rebutted the business judgment rule, to the extent it applies.

### D.    *LaRocca's Affirmative Defense Forecloses the Claim*

Although the Trustee has plausibly stated a claim for breach of fiduciary duty, the court must still consider LaRocca's defense to the claim as set forth on the face of the Complaint. In his Motion, LaRocca points to the officers' numerous misrepresentations and other efforts to conceal their schemes from the board. Relying on Mich. Comp. Laws § 450.1541a(2)(a), LaRocca argues that the officers' conduct, as alleged in the Complaint and supplemented by the meeting minutes, provides him with a defense to the Trustee's claim.

The Trustee disagrees, of course. The Trustee argues that although LaRocca may have relied on the officers' representations, such reliance was unreasonable under the circumstances. Moreover, according to the Trustee, reasonable reliance is a question of fact that should not be addressed in connection with a motion to dismiss.

The MBCA permits a director of a Michigan corporation to rely on information, reports and statements, among other things, presented by directors, officers and employees of the corporation who such officer or director "reasonably believes to be reliable and competent in the matters presented." Mich. Comp. Laws § 450.1541a(2)(a). Only where a director has "knowledge concerning the matter in question that makes [such] reliance…unwarranted" is the defense inapplicable. Mich. Comp. Laws § 450.1541a(3). Although Michigan courts do not appear to have considered the issue, this court concludes that Mich. Comp. Laws § 450.1541a(2)(a) is an affirmative defense to a claim for breach of the duty of care.

Because a defendant has the burden of demonstrating an affirmative defense, it is generally more appropriately considered after the pleadings stage. *See Estate of Barney v. PNC Bank, N.A.*,

714 F.3d 920, 926 (6th Cir. 2013); *Lockhart v. Holiday Inn Express Southwind*, 531 Fed. Appx. 544, 547 (6th Cir. 2013) (citation omitted).  However, the Sixth Circuit has explained that a motion to dismiss may be granted on the basis of a meritorious affirmative defense if the facts in the complaint conclusively establish the existence of the defense as a matter of law.  *See Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) (citation omitted); *Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 412 (6th Cir. 2013) (citation omitted).  If the plaintiff's own allegations in the complaint demonstrate that relief is barred by an affirmative defense, a motion to dismiss may be granted.  *Cheatom v. Quicken Loans*, 587 Fed. Appx. 276, 279 (6th Cir. 2014) (citation omitted); *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554-55 (6th Cir. 2012) (citation omitted).[14]

LaRocca asserts that the Trustee's own allegations in the Complaint, as supplemented by the meeting minutes, demonstrate the affirmative defense of reasonable reliance under Mich. Comp. Laws § 450.1541a(2)(a).  The court agrees.  While a director's reasonable reliance is usually a question of fact, the face of the Complaint establishes LaRocca's defense.  LaRocca was wholly attentive to the affairs of the Debtor.  He appears to have regularly attended and participated in board meetings.  The Complaint does not state otherwise, nor does it suggest that he was derelict in his duties.  Rather, the Complaint emphasizes the great lengths undertaken by the officers to deceive LaRocca and the other board members.

The first informal complaint was filed with the FCC in late February 2014.  (Compl. ¶ 75)  It was disclosed and given to the board either before or during the board meeting on March 6,

---

[14]   Michigan courts similarly permit a motion for summary disposition under Mich. Ct. R. 2.116(C)(8) – the equivalent to Rule 12(b)(6) – to be granted where the face of a complaint demonstrates that the claim is barred by an affirmative defense.  *See, e.g.*, *Scalici v.Bank One, NA*, 2005 WL 2291732, at *2 (Mich. Ct. App. Sept. 20, 2005); *Wellman v. Bank One, NA*, 2005 WL 2291741, at *1 (Mich. Ct. App. Sept. 20, 2005) (citations omitted).

2014.  (Compl. ¶ 75; Mot., Ex. A, p. 3)  However, the first informal complaint did not contain any allegations regarding the officers' schemes.[15]  Rather, much like in *Martin*, the officers continued to mislead the board by misrepresenting the first informal complaint as a byproduct of billing disputes with the carriers.  (Compl. ¶ 75)  During the board meeting on March 6, 2014, "there was no discussion of the risks posed by the [informal FCC complaint] other than a strain on company resources that would likely result in answering the complaint."  (Compl. ¶ 75)  The officers informed the board that they viewed the informal FCC complaint as an "opportunity," not a risk.  (Compl. ¶ 75)

The second informal complaint was filed in early April 2014.  (Compl. ¶ 79)  Unlike the first informal complaint, the second informal complaint apparently did allege the schemes perpetrated by the officers.  (Compl. ¶ 79)  The Complaint does not state that a copy of the second informal complaint was ever given to LaRocca prior to the conclusion of his term.  The court infers that it was not, because the board meeting minutes state that the first informal complaint was given to the board.  (Mot., Ex. A, p. 2)  The meeting minutes are silent, however, with respect to the second informal complaint.

Throughout April 2014, the officers continued to obscure the details of their schemes from the board, casting the Debtor as the "victim" of the carriers' billing disputes.  (Compl. ¶ 76)  The Complaint states that the officers' schemes were "likely" not known to the board until the *formal* complaint was filed with the FCC in October 2014, more than five months after LaRocca had left the board.  (Compl. ¶ 121)  To some extent, such an allegation renders the Complaint self-defeating, as LaRocca left the board approximately five months earlier.

---

[15]     The Response asserts that the first informal complaint detailed the officers' schemes and cites to paragraph 75 of the Complaint.  The Complaint contains no such allegation.

According to the Complaint, not only were the officers' schemes hidden from the board until October 2014, but the board was overtly misled by the officers. (Compl. ¶ 121) The officers told the board that as a result of the billing disputes (not the schemes), the Debtor's "cash flow was 'extremely tight,'" thereby necessitating additional funds. (Compl. ¶ 79) The Complaint makes it clear that LaRocca reasonably relied on the officers' representations that in order to ensure continued "growth," additional funds were needed, whether through loans, capital contributions or stock offerings. (Compl. ¶¶ 79, 80; Mot., Ex. B, p. 2)

Finally, the strategy of misdirection employed by the officers cannot be overlooked. The meeting minutes reveal that the officers furthered their schemes by pretending to act with transparency. First, the meeting minutes from March 6, 2014 reveal that the Debtor had previously retained legal counsel to assist it with the first informal complaint. (Mot., Ex. A, p. 4) LaRocca could therefore reasonably rely on the fact that legal counsel was involved and working with the Debtor to resolve the billing disputes. *See also* Mich. Comp. Laws § 450.1541a(2)(b). Second, the officers informed the board that they would, and in fact did, cause the Debtor to file a complaint with the Michigan Public Service Commission against the carriers. (Mot., Ex. A, p. 4) Third, the officers reported to the board that discussions with the majority of carriers remained ongoing and that mediation of the disputes had been scheduled. (Mot., Ex. A, p. 4) Fourth, in an effort to further legitimize their misrepresentations, the officers told the board that they had informed the Debtor's secured lender of the billing disputes and the first informal complaint. (Mot., Ex. A, p. 4) By leading the board to believe that they were proactively and productively pursuing resolution of the billing disputes, the officers, like the manager in *Martin*, further masked the true cause of the Debtor's financial distress.

In the aggregate, the Complaint states that the board reasonably relied on the officers' misrepresentations no less than seven times. (Compl. ¶¶ 120-122, 129, 136-138) The facts made known to LaRocca during his tenure on the board were cloaked by the officers' continued misrepresentations and concealment, as expressly alleged in the Complaint. This is particularly true because LaRocca was no longer serving on the board when the directors "likely" first became aware of the schemes in October 2014. (Compl. ¶ 121)

The court concludes that the face of the Complaint demonstrates that LaRocca reasonably relied on the Debtor's officers. Because the Complaint fails to allege, beyond conclusory statements, that LaRocca had knowledge of the schemes or specific information that would otherwise provide him with that knowledge, Mich. Comp. Laws § 450.1541a(3) does not negate his defense. The Trustee's claim against LaRocca for breach of the duty of care is therefore foreclosed under Mich. Comp. Laws § 450.1541a(2).

### E.    Leave to Amend the Complaint

The Trustee has requested leave to amend the Complaint in the event that it is dismissed. The Sixth Circuit has instructed that if it is at all possible for the losing party to state a claim for relief in a more carefully drafted complaint, leave to amend should be given. *See, e.g*., *Brown v. Matauszak*, 415 Fed. Appx. 608, 615 (6th Cir. 2011); *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc*., 342 F.3d 634, 644 (6th Cir. 2003).

Here, it is possible that the Trustee can amend the Complaint by including additional facts that negate LaRocca's affirmative defense. While the amendment may ultimately prove futile, the Trustee should at least be provided with the opportunity.

**CONCLUSION**

For the foregoing reasons, the court shall dismiss Count V of the Complaint with respect to LaRocca.[16]  The court shall enter a separate order consistent with this Opinion.

---

[16]  The court's decision applies only to LaRocca who, by virtue of his term ending on May 1, 2014, had no duty to consider matters arising after that date.  *See Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 766 (6th Cir. 2012) (director had no duty to Michigan corporation for matters occurring after leaving board).

**Signed: June 19, 2018**





John T. Gregg
United States Bankruptcy Judge